IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **TAMMY T. ELLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:25-cv-00209** |
| | ) | |
| **CITY OF SPRINGFIELD, TENNESSEE,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is a motion for summary judgment (Doc. No. 22) filed by Defendant City of Springfield, Tennessee (the "City"), which is fully briefed. (*See* Doc. Nos. 25, 27). For the reasons stated herein, the motion (Doc. No. 22) is **DENIED**.

## I. BACKGROUND[1]

The City maintains a Parks and Recreation Department that is responsible for, among other things, maintaining and operating several of the City's facilities designated for parks or recreation, including one such multipurpose facility known as the "Center." (*See* SOF ¶¶ 1-2;[2] Answer ¶¶ 10-14). The Center is comprised of two levels. The main ground floor features a full-size basketball court. (*See* SOF ¶¶ 1-2; Answer ¶¶ 13-14). And the mezzanine level contains a walking track and bleachers to provide a "top down" view of the basketball court. (*See* SOF ¶ 2; Answer ¶ 14). There are no elevators inside the Center to access the mezzanine. (Answer ¶ 23).

---

[1] At this stage, the Court construes the factual record in the light most favorable to Plaintiff, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum and Order is not a complete statement of the facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motion.

[2] For ease of reference, the City's statement of undisputed material facts (Doc. No. 24) together with Plaintiff's response (Doc. No. 26) is cited as "SOF ¶ __."

The Center serves as the venue for the youth basketball league operated by the City's Parks and Recreation Department during the winter months. (*See id*. ¶ 16). For youth basketball games, the full-size basketball court is divided into two smaller courts, and often two games are being played at the same time. (*See id*. ¶ 17). When multiple basketball games are played simultaneously, the only available bleachers are located on the mezzanine level. (*See id*. ¶ 15). When the youth basketball groups play games at the Center, the City posts signs on the doors to the basketball court directing all spectators to the mezzanine. (*See* Doc. No. 25-1 at 8). There are no writings or signs posted in the Center indicating there are exceptions to the City's policy (written on the signs) that all spectators are required to sit upstairs in the mezzanine. Prior to 2024, Plaintiff and other individuals with disabilities had occasionally been permitted to watch games at the Center from the floor level. (SOF ¶¶ 10, 12).

On March 2, 2024, Plaintiff went to the Center to watch her grandson play in the youth basketball league run by the City's Parks and Recreation Department. (Answer ¶ 27). When she entered the Center, Plaintiff approached Logan Head, a City employee:

> I went up to him and I said, hey, I cannot climb steps because of a health issue. Will you let me sit down here on the floor? And he said, no, ma'am, nobody's allowed to sit on the floor today. You have to go upstairs. And that was it, no more discussion, you go up there or you don't stay.

(Plaintiff Deposition at 46). After climbing the stairs to the mezzanine level, Plaintiff was winded and disoriented. As she tried to find a seat, Plaintiff fell to the ground and suffered serious injuries that ultimately required total hip replacement surgery.

Plaintiff filed the present lawsuit against the City on February 25, 2025, claiming it discriminated against her in violation of her federally protected civil rights under Title II of the Americans with Disabilities Act ("ADA"). (Doc. No. 1).

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich*., 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III. LAW AND ANALYSIS

Title II of the ADA "focuses on the particular conduct of particular public entities." *Y.A. by Alzandani v. Hamtramck Public Schools*, 137 F.4th 862, 869-70 (6th Cir. 2025) (Title II applies broadly, "from state courts to state-owned hockey rinks."). Specifically, under Title II of the ADA,

"no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A Title II plaintiff may bring a claim for intentional discrimination or for failure to provide a reasonable accommodation." *Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1119 (6th Cir. 2021). Thus, "to be liable [under Title II of the ADA], an entity must have denied someone access to one of its services, programs, or activities or otherwise have subjected someone to discrimination." *Y.A.*, 137 F.4th at 870 (citation modified).

Here, Plaintiff brings a failure-to-accommodate claim. "To prevail under this theory, a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). "Relatedly, the plaintiff must prove that the failure to accommodate impeded his ability to participate in or benefit from a program or service." *Id*. "Because failing to grant a reasonable accommodation is itself direct evidence of discrimination, plaintiffs who meet this burden need not provide additional evidence of discriminatory intent." *Id*. Through its pending motion, the City *does not* argue Plaintiff lacks proof of the essential elements of her failure-to-accommodate claim. (*See* Doc. No. 23 at 8 ("But Plaintiff's claim fails before those elements are reached because the conduct on which she relies is not attributable to the City in the first place.")).

Rather, the City frames Plaintiff's claim as seeking to hold it vicariously liable for the actions of Head, its employee who denied Plaintiff's request for accommodation. (*See* Doc. No. 23 at 9 ("Because vicarious liability does not apply to Title II claims, the City cannot be held liable for [the City employee who denied Plaintiff's request for accommodation].") (citing *Jones*, 20

F.4th at 1122)). The City also claims that it had a policy of accommodation and that Head's denial of Plaintiff's request for accommodation was an improper act of one nonpolicy-making employee:

> Although the on-duty employee could grant an individual request for floor-level seating, no evidence indicates that he had authority to establish or alter the City's accommodation policy. The alleged denial therefore represented a departure from the City's policy, not an implementation of it.

(Doc. No. 23 at 9).

In her response, Plaintiff argues the City *can* be held liable for Head's denial of her request for accommodation because a reasonable jury could conclude that Head was implementing the City's policy (written on signs posted at the Center during youth basketball games) to direct all spectators of younger youth basketball games to the mezzanine at the Center. (*See* Doc. No. 25 at 9-14). In its reply, the City contends that Plaintiff has not shown that it had a policy of denying requests for accommodation. (*See* Doc. No. 27 at 3 ("A rule where exceptions were provided on request did not 'order' the denial of Plaintiff's accommodation.")).

The City's motion for summary judgment (Doc. No. 22) is **DENIED** because it fails to show the absence of genuine disputes as to the material facts of Plaintiff's claim or that it is entitled to judgment in its favor as a matter of law. (*See* SOF ¶¶ 5-9, 13). Moreover, the City's arguments are premised on a view of the evidence and inferences therefrom in the light most favorable to itself, which the Court cannot do in resolving a moving party's motion for summary judgment. *See* *Anderson*, 477 U.S. at 249.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE